The CouRT
was of opinion, (nem con.,) that the fine for receiving was to be appropriated in the same manner as the fine, for stealing ; and that there was such an interest as incapacitated the witness.
He released to the United States his interest, and was again offered as a witness.
It was again objected by Mr. Caldwell, that this would not prevent the bank from receiving the full half of the fine, and the witness would not be estopped from receiving his dividend upon his shares of stock, and, if he did not receive it at the first dividend, yet it would go to increase the general fund. The United States could not claim it, because it is not now in esse ; and therefore the release can only operate as an estoppel to him personally, and transfers nothing.
The CotjRT permitted the witness to be sworn and examined.
Verdict, guilty.
Motion in arrest of judgment, because the words “ goods and chattels,” in the Act of Congress, do not include bank-notes. They are not goods or chattels. Morris’s case, Leach, Cr. Ca. 208.
Cranch, J.,
delivered the opinion of the Court. This is an indictment for a misdemeanor, in receiving a bank-note knowing it to be stolen. Bonds, bills, and notes, by the common law, were not held to be such goods whereof larceny could be committed, being of no intrinsic value, and not importing any property in possession of the person from whom they were taken. 4 Bl. Com. 234; 1 Hawk. 142, c. 33, § 22. The receiving of stolen goods, knowing them to be stolen, was, at common law, only a misdemeanor. But as the stealing of a bank-note was not a crime at common law, the receiving a bank-note knowing it to be stolen, was not even a misdemeanor. The Act of Congress under which the prisoner is indicted, [1 Stat. at Large, 116,] speaks of “ goods and chattels” only. To know the meaning of the expression, “ goods *280 and chattels,” we must resort to the common law, where we find that neither promissory notes, nor bank-notes, nor money, are included within that expression. Bank-notes, therefore, are not within the Act of Congress. But it has been contended that the Act of Maryland against stealing bank-notes, uses the words “ other goods,” thereby implying that bank-notes are goods. But if that was the case the act was wholly unnecessary, as the preexisting law was abundantly sufficient for the punishment of steal-ers of goods. The foundation of the act itself, the evil which the act was intended to remedy, was that bank-notes were not goods in the eye of the law, and therefore it was no offence to steal them. The counsel for the United States relied much upon the case of Rex v. Woods, cited in note to 1 Hawk. 232, (c. 58, App. 7,) from 3 Select Trials, 195, which case we have not seen. The note of it in Hawkins, seems rather to be an inference of the editor, than an abridgment of the case itself, and this inference is expressly contradicted by the case of Rex v. Morris, in Leach, Cr. Ca., in which it was decided by the twelve judges that the receiving banknotes knowing them to be stolen, was not a misdemeanor within any of the British statutes. The case then remains upon the common law definition of goods and chattels. The judgment must be arrested.